```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALBINO MURO,                    )
                                )    CIVIL ACTION NO. 05-1131
          Petitioner,           )
                                )    Judge Thomas M. Hardiman
     v.                         )
JOSEPH J. PIAZZA, et al.,       )    Magistrate Judge
                                )    Amy Reynolds Hay
          Respondents.          )
```

## REPORT AND RECOMMENDATION

I.  RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

II. REPORT

In January 1999, a jury empaneled by the Court of Common Pleas of Allegheny County found Petitioner, Albino Muro, guilty of first-degree murder, robbery, unlawful restraint, theft by unlawful taking, and receiving stolen property. He was represented at trial by Sumner Parker, Esquire, a member of the Allegheny County Public Defender's Office. The Honorable Donna Jo McDaniel presided over Petitioner's trial and sentenced him to life without parole on the murder conviction, plus a concurrent term of five to ten years of imprisonment for the robbery conviction. No further penalty was imposed on the remaining convictions.

Judge McDaniel summarized the evidence admitted at Petitioner's trial in a July 2, 1999 Opinion:

> On February 23, 1998, the victim, Daniel Yurick, was found bludgeoned to death in his apartment in North Versailles, Pa, in Allegheny County. [A] subsequent investigation determined that he had been beaten about his head with a table leg and left to die sometime between the night of Friday, February 20 and the morning of Saturday, February 21. [Petitioner], who had taken a bus on Sunday, February 22 from Pittsburgh to Daytona, Florida, was arrested there on March 3, 1998 for the murder of Daniel Yurik.
>
> [Petitioner] and [the] victim were heroin addicts who had met at a methadone clinic which both frequented. After [Petitioner] was ordered by his wife to leave their home, he called the victim to get some dope. According to [Petitioner's trial] testimony, the victim allowed him to stay at his apartment and the two of them spent Tuesday, February 17 until Friday night, the 20th, buying and using dope which the victim purchased from his sources in Duquesne, Pa. On Friday night, [the Petitioner testified,] he was half asleep on a small couch in the living room when he and the victim got into an argument about money and the victim picked up scissors and he [the Petitioner], picked up a table leg. Thinking he was going to be stabbed, he hit the victim with the table leg three times. To prevent the victim from coming after him, [the Petitioner] then tied the victim's leg with a jacket. [He] gathered his drug paraphernalia and left the apartment while the victim was unconscious but still breathing. The medical expert testified that death would have come within an hour of the blows to the victim's head.
>
> [Petitioner] took the victim's car, drove to Greensburg, PA and left the car in the parking lot of the Westmoreland County Community College where it was found several days later. He got a ride to the bus station in Pittsburgh and left for Florida where he was arrested.

(Ex. 1(a), App. A at 2-3).[1]

---

[1] All Exhibits cited herein are attached to Respondents' Answer (Doc. 12).

Petitioner, through James Wilson, Esquire, of the Public Defender's Office, appealed his judgment of sentence. On March 30, 2000, the Superior Court of Pennsylvania affirmed. (Ex. 2). The Supreme Court of Pennsylvania denied a subsequently filed Petition for Allowance of Appeal.

Petitioner filed a timely *pro se* post-conviction motion pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA"). In September 2003, Judge McDaniel appointed Scott Coffey, Esquire, to represent the Petitioner. Approximately two months later, Attorney Coffey filed a Motion for Leave to Withdraw accompanied by a fourteen-page letter pursuant to Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. Ct. 1988), in which he asserted that the issues raised in Petitioner's PCRA petition were without arguable merit. (Ex. 7).

Judge McDaniel denied the PCRA petition (Ex. 13). Petitioner filed a *pro se* appeal (Ex. 14), and, on March 28, 2005, the Superior Court affirmed. (Ex. 15). Petitioner then filed with this court a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1).

**A.  Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132 § 104, 110 Stat. 1214, restricts a federal court's authority to grant relief when a state court has previously adjudicated and rejected on the merits the

petitioner's federal constitutional claims.  28 U.S.C. § 2254(d).  It provides, in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court of the United States has explained that the two clauses of § 2254(d)(1) have independent meaning:  "[A] decision by a state court is 'contrary to' our clearly established law if it applies a rule that contradicts the governing law set forth in our cases or if it confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent."  <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).

The Supreme Court further stated that the "unreasonable application" clause of § 2254(d)(1) permits a federal habeas court to "grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts" of the

petitioner's case. Id. at 413. When analyzing a state court decision under §2254(d)(1)'s "unreasonable application" clause:

> [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied a Supreme Court case incorrectly. Rather, it is the habeas applicant's burden to show that the state applied that case to the facts of his case in an objectively unreasonable manner.

Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Bell v. Cone, 535 U.S. 685, 699 (2002); citing Williams, 529 U.S. at 411); see also Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).

**B.  Legal Analysis**

   **1.  Claims Related to the Trial Court's Decision to Grant a Mistrial and Deny the Defense's Motion for a Continuance**

      **(a)  Factual Background**

Petitioner's first trial commenced on January 5, 1999. During the prosecutor's opening remarks, he mentioned circumstances that showed that Petitioner had attempted to commit a robbery four days prior to the date he committed the offenses for which he was being tried. (1/5/99 N.T. at 13). When the witness who was going to testify about that attempted robbery was called by the Commonwealth, Judge McDaniel ruled that the proffered testimony's prejudicial value outweighed its probative value. (1/5/99 N.T. at 48-50). She therefore sustained a defense objection to the witness's testimony. (Id.)

The next day, the defense moved for a mistrial because the attempted robbery's facts had been mentioned in the prosecutor's opening statement. (1/6/99 N.T. at 101). Judge McDaniel granted the defense's motion. (1/6/99 N.T. at 102). Upon the grant of mistrial, Attorney Parker immediately requested a continuance. (1/6/99 N.T. at 102-103). Judge McDaniel denied the request (1/6/99 N.T. at 104), a new jury was selected, and Petitioner's second trial commenced the following day, on January 7, 1999.

**(b)  The Denial of the Defense's Motion for a Continuance**

Petitioner claims that Judge McDaniel erred by denying the defense's request for a continuance.[2] This claim is not cognizable in federal habeas corpus review. Whether the trial court abused its discretion in denying the defense's request for a continuance is a question of state law that is not subject to review by a federal court. See e.g., Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)); see also Priester v. Vaughn, 382 F.3d 394, 401 (3d Cir. 2004) (federal

---

[2]  This claim is listed as Ground IV in the Petition. Petitioner claims that a continuance was warranted because his trial counsel was ill. The trial transcript reveals, however, that Attorney Parker requested a continuance not based on an illness, but because he had a series of other homicide cases already scheduled and because a piece of correspondence, authored by Petitioner, had just been delivered to counsel that same morning. (1/6/99 N.T. at 102-04).

6

habeas court cannot "reexamine state court determinations on state-law questions.")

### (c) Ineffective Assistance of Counsel

Petitioner also contends that Attorney Parker provided him with constitutionally ineffective assistance of counsel when he failed to object to Petitioner's retrial on the basis that it violated his rights under the Double Jeopardy Clause of the United States and Pennsylvania Constitutions.[3] He further contends that counsel should have filed an interlocutory appeal from the trial court's denial of the motion for a continuance.[4]

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States held that in order to show counsel rendered constitutionally ineffective assistance, a petitioner must demonstrate: (1) that counsel's performance was unreasonable;[5] and (2) that the deficient performance prejudiced

---

[3] This claim is raised in Ground VIII(b)(iv) of the Petition.

[4] This claim is raised in Ground VII(c) of the Petition.

[5] To meet the first requirement of Strickland, the petitioner must establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. 466 U.S. at 688. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the petitioner must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689, 690-92. The question is not whether the defense was free from errors of judgment, but whether counsel exercised the customary

the defense.[6]  See also Wiggins v. Smith, 539 U.S. 510, 521 (2003).

In denying relief on these claims, the Superior Court held that Attorney Parker did not provide Petitioner with deficient representation because the underlying double jeopardy claim that Petitioner contends Parker should have raised has no merit.  (Ex. 15 at 11-12).  The court noted that both the federal and state constitutions bar retrial where the prosecution specifically undertakes to prejudice the defendant to the point of denying him a fair trial.  (Ex. 15 at 11-12); see also, Commonwealth v. Smith, 615 A.2d 321, 322 (Pa. 1992) (noting that Pennsylvania has adopted the federal constitutional standard set forth in Oregon v. Kennedy, 456 U.S. 667 (1992) to analyze double jeopardy claims).  The court then concluded that:

> Here, the prosecutor's mention in his opening statement
> of the circumstances surrounding the first robbery was
> not so egregious as to evidence an intention on his
> part to deny [Petitioner] a fair trial.  Rather, he
> misjudged the admissibility of the evidence of the
> first robbery which he had intended to introduce in
> [Petitioner's] trial as an example of how [his] life

---

skill and knowledge that normally prevailed at the time and place.  Id. at 689.  Obviously, when a petitioner claims that his counsel failed to raise a claim that the court determines to be meritless, habeas relief under Strickland is not available.  See id. at 691 (the failure to pursue "fruitless" claims "may not be challenged as unreasonable.")

[6]  To prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

>was spinning out of control and how [he] needed money.
>Given the facts present here, principles of double
>jeopardy did not bar retrial of [Petitioner] following
>the Court's granting of a mistrial for manifest
>necessity.  And, counsel was not ineffective for
>failing to move to dismiss upon those grounds.

(Ex. 15 at 11-12 (quoting Judge McDaniel's July 2, 1999 Opinion)).

With regard to Petitioner's contention that trial counsel should have filed an interlocutory appeal, the Superior Court held:  "the denial of a request for continuance is not a proper basis for an interlocutory appeal."  (Ex. 15 at 9 (citing Pa.R.A.P. 311; Commonwealth v. Billett, 440 A.2d 633 (Pa. Super. Ct. 1982)).

Petitioner has failed to demonstrate that the Superior Court's rejection of his ineffective assistance of counsel claims was "contrary to" Strickland.  Although the Superior Court did not cite Strickland in denying these claims, it did rely on Pennsylvania cases that set out an identical standard for ineffectiveness. (Ex. 15 at 8 (citing Commonwealth v. Williams,846 A.2d 105, 111 (Pa. 2002)); see also Werts v. Vaughn, 228 F.3d 178, 202-03 (3d Cir. 2000) (examining Pennsylvania's ineffective assistance law and determining that it is identical to the Strickland standard).  As the Williams Court explained, "a run-of-the mill state-court decision applying the correct legal rule from [Supreme Court] cases [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."  529 U.S. at 406.

9

Petitioner likewise has failed to demonstrate that the Superior Court's decision was an "unreasonable application" of <u>Strickland</u>, 28 U.S.C. § 2254(d)(1), or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented[.]" 28 U.S.C. § 2254(d)(2).  The state courts' determination that the prosecutor did not deliberately attempt to force a mistrial is supported by the record and Attorney Parker was not ineffective for failing to challenge retrial on double jeopardy grounds.  Moreover, under state law, there were no appropriate grounds to file an interlocutory appeal.  Thus, trial counsel's conduct was not objectively unreasonable in failing to file such an appeal.[7]

### 2. Additional Ineffective Assistance of Counsel Claims

#### (a) Failure to Object to Valerie Muro's Testimony

Petitioner claims that Attorney Parker provided him with ineffective assistance for failing to object to the testimony of

---

[7] Petitioner further claims that his appellate counsel provided him with ineffective assistance for failing to raise this claim on direct appeal, thereby waiving it.  (<u>See</u> Ground VIII(b)(iii)).  Although the Superior Court noted that Petitioner's claim that Attorney Parker provided him with ineffective assistance for failing to raise a double jeopardy challenge at trial was waived because appellate counsel failed to raise the claim on direct appeal, it nevertheless reviewed the claim on the merits and found it wanting.  Accordingly, appellate counsel did not provide ineffective assistance because, (a) the underlying claim of trial counsel error had no merit, and (b) the Superior Court considered the claim, notwithstanding direct appeal counsel's alleged waiver.

10

his wife, Valerie Muro.[8] At trial, she testified about events that preceded the victim's murder and which precipitated Petitioner leaving their home. She stated that she argued with Petitioner over his heroin use and that during one argument he became aggravated and smashed a planter. (1/7/99 N.T. at 41-45).

Petitioner claims that Attorney Parker should have objected to Valerie Muro's testimony on the basis that it was privileged under Pennsylvania's "spousal privilege" rule. In ruling on this claim on direct appeal, however, the Superior Court determined that Valerie Muro's testimony fell within an exception to the spousal privilege rule. The court held:

> "[I]f the nature of the communication [between husband and wife] is not imbued with an aura of sharing disclosure precipitated largely due to the closeness spouses share, then arguably it is not privileged." [Commonwealth v. Spetzer, 722 A.2d 702, 711 (Pa. Super. Ct. 1998)]. Normally, threats or statements made in a threatening manner would not be subject to the privilege. Id. Herein, the communications involved arguments and other threatening behavior. Given the context of the remarks, they were not made with an aura of sharing disclosure, and they were not subject to the privilege.

(Ex. 2 at 4-5). This court is bound by the Superior Court's state-law determination that Valerie Muro's testimony fell outside Pennsylvania's spousal privilege. Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)); see also

---

[8] This Claim is raised at Ground I in the petition.

Priester v. Vaughn, 382 F.3d 394, 401 (3d Cir. 2004) (federal habeas court cannot "reexamine state court determinations on state-law questions.")[9]

**(b)  Failure to Object to Perjured Testimony**

In his next claim, Petitioner contends that both trial and appellate counsel provided him with ineffective assistance for failing to object to the allegedly perjured testimony of two of the Commonwealth's witnesses: Rick Veschio (who discovered the victim's body) and Officer DiCenzo.  Petitioner argues that Veschio perjured himself because he gave inconsistent testimony at the first and second trial regarding whether he went back into the victim's house with the police after he allegedly found the body.  (Ex. 14 at 13-14).  He argues that Officer DiCenzo's testimony corroborated Veschio's false testimony.  (Ex. 14 at 14).

The Superior Court denied this claim on the merits.  It determined that a review of the record demonstrated that Petitioner's insistence that Veschio and Officer DiCenzo perjured themselves had "no arguable merit[.]" (Ex. 15 at 9).  The Superior Court further held that: "[E]ven though trial counsel

---

[9] In Ground II, Petitioner contends that his appellate counsel provided him with ineffective assistance of failing to properly raise this claim on appeal.  However, as set forth above, the Superior Court reviewed the underlying ineffective assistance of trial counsel claim on the merits on direct appeal.  Thus, there is no merit to his claim that appellate counsel failed to properly preserve this claim.

did not object to the testimony, he did conduct cross-examination of both witnesses, and vigorously challenged the credibility of Veschio. We cannot conclude that trial counsel lacked a reasonable basis for proceeding as he did." (Ex. 15 at 9).

### (c) Failure to Object to Jury Instruction

Petitioner also contends that Attorney Parker provided him with ineffective assistance for failing to challenge an allegedly improper jury instruction that addressed a defendant's "duty to retreat before resorting to deadly force in self-defense if he knows that he can avoid the necessity of using such force with complete safety by retreating." (1/13/99 N.T. at 560). According to Petitioner, the victim's home was his (Petitioner's) "current dwelling" at the time of the attack (which he claimed was initiated by the victim), and therefore he had no duty to leave his "home" before using deadly force in self-defense.[10]

In rejecting this claim, the Superior Court found Petitioner's argument that the victim's home was also his current dwelling to be "specious." (Ex. 15 at 11). It determined that the trial court's instruction was appropriate because the victim's home was *not* Petitioner's home: "he was, by his own testimony, in transit, waiting for a ride to his brother's house, but remaining with his eventual victim in the interim." (Ex. 15 at 11).

---

[10] This claim is raised at Ground VIII(b)(i) and (ii) of the Petition.

### (e) Ineffective Assistance of Appellate Counsel

Petitioner also claims that his appellate counsel, Attorney Wilson, provided him with ineffective assistance because counsel identified five meritorious issues in his 1925(b) Statement of Matters Complained of On Appeal, but then later abandoned those claims as the appeal proceeded.[11] In rejecting this claim, the Superior Court noted that one of the issues allegedly abandoned by appellate counsel – that trial counsel rendered ineffective assistance for failing to object to Valerie Muro's testimony on the basis of the spousal immunity privilege – was properly raised and rejected by it on direct appeal. (Ex. 15 at 10). It then noted that the remaining four claims that appellate counsel allegedly abandoned were raised by Petitioner during the present proceedings (the PCRA proceedings) and were considered on the merits and rejected by the court. (Ex. 15 at 10).

### (f) Conclusion

The Superior Court's decision rejecting these ineffective assistance of counsel claims easily satisfies AEDPA's standard of review. Because the Superior Court correctly identified the proper elements of an ineffective assistance of counsel claim (See Ex. 2 at 3-4; Ex. 15 at 8), its decision was not "contrary to" Strickland. 28 U.S.C. § 2254(d)(1).

---

[11] This ineffective assistance of appellate counsel claim is raised in Ground VIII of the Petition.

14

Nor was the Superior Court's decision an unreasonable application of Strickland, 28 U.S.C. § 2254(d)(1), or an unreasonable determination of the facts in light of the evidence presented at trial. Id. § 2254(d)(2). As noted above, this court is bound by the Superior Court's state-law decisions that: (1) Valerie Muro's testimony was not privileged; and (2) the challenged instruction regarding Petitioner's duty to retreat before resorting to deadly self-defense was appropriate under the circumstances of this case. Accordingly, because Valerie Muro's testimony was not subject to the privilege, and because the challenged instruction was proper, Attorney Parker did not provide Petitioner with ineffective assistance for failing to object to either the testimony or the instruction, and Petitioner was not prejudiced by Attorney Parker's failure to raise these meritless objections.

In addition, the Superior Court's conclusion that there is no basis to conclude that either Veschio or Officer DiCenzo perjured himself was not an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). Moreover, Attorney Parker attempted to highlight inconsistencies in Veschio's testimony through cross-examination, and, in addition, the testimony at issue was relatively inconsequential, such that Petitioner was not prejudiced by counsel's handling of the matter.

15

Finally, as the Superior Court noted, Petitioner suffered no prejudice as a result of appellate counsel's alleged failure to pursue claims on direct appeal, because the court reviewed the claims at issue notwithstanding the alleged waiver.

### 3. Prosecutorial Misconduct

Petitioner contends that the Commonwealth violated his Fifth and Sixth Amendment rights because the prosecution purportedly introduced through direct examination in the second trial evidence of his previous attempted robbery (which information had resulted in the declaration of a mistrial of the first trial).[12] He also claims that the his constitutional rights were violated because the prosecution knowingly presented the perjured testimony of Veschio and Officer DiCenzo.[13]

The Superior Court considered both of these claims during the PCRA appeal. (Ex. 15 at 7). It held that each claim was waived because it could have been, but was not, raised on direct appeal. (Id. (citing 42 PA.CONS.STAT. § 9544(b)).

In their Answer, Respondents correctly contend that these prosecutorial misconduct claims are barred by the doctrine of procedural default. This doctrine dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law

---

[12] The Claim is raised at Ground VI in the Petition.

[13] This Claim is raised at Ground V in the Petition.

that is "independent" of the federal question and "adequate" to support the judgment. See e.g., Coleman v. Thompson, 501 U.S. 722, 750 (1991).

In this case, the decision by the Superior Court to deny Petitioner relief based upon state procedural grounds was "independent" of federal law. Under Pennsylvania statutory law, an issue raised for the first time in a PCRA petition is waived if the petitioner could have raised it, but failed to do so, on direct appeal. 42 PA.CONS.STAT. § 9544(b)  The Superior Court's decision is also "adequate," since, at the time of Petitioner's waiver (when he was pursing his direct appeal), Pennsylvania appellate courts consistently and regularly dismissed review of waived claims in non-capital cases.

In cases like the present one, therefore, this court "may only reach the merits if the petitioner makes a showing of 'cause and prejudice' or establishes a fundamental miscarriage of justice." Whitney v. Horn, 280 F.3d 240, 252-53 (3d Cir. 2002). Petitioner points to no evidence for the default or prejudice stemming from the default, as is his burden. Lines v. Larkin, 208 F.3d 153, 165 (3d Cir. 2000). Nor has he established the existence of a fundamental miscarriage of justice. See Werts v. Vaughn, 228 F.3d 178, 189 (3d Cir. 2000). As a result, these prosecutorial misconduct claims are procedurally barred, and this court may not review them on the merits.

17

**4.     Errors During PCRA Proceedings**

Finally, Petitioner raises errors pertaining to his PCRA proceeding, none of which is cognizable in federal habeas corpus. First, he contends that his PCRA counsel provided him with constitutionally ineffective assistance for failing to investigate his claims, interview individuals who would have testified for the defense at trial, and raise additional claims of trial counsel ineffective assistance.[14]  A claim of ineffective assistance of PCRA counsel is not cognizable in a federal habeas corpus petition because the right to effective assistance of PCRA counsel exists pursuant to state law, and is not mandated by the Constitution or laws or treaties of the United States.  See e.g., Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002) (citing Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further."))

Second, Petitioner argues that the PCRA court erred in not conducting an evidentiary hearing.[15]  The issue of whether a PCRA

---

[14] Petitioner's claims of ineffective assistance of PCRA counsel are listed at Ground VII of the Petition.  During his PCRA appeal, Petitioner presented affidavits from his mother and his half-brother.  He claimed that his trial counsel should have presented their testimony at trial and that his PCRA counsel was ineffective for failing to pursue this issue.  The Superior Court noted that, while the affidavits were not part of the certified record, it had review them and determined that their contents did not warrant PCRA relief.  (Ex. 15 at 13).

[15] This claim of PCRA court error is raised at Ground III of the Petition.

petitioner is entitled to an evidentiary hearing is a question of state law that is not subject to review by a federal court. See e.g., Preister, 382 F.3d at 402. Moreover, even if the state court erred as a matter of state law in not granting an evidentiary hearing, Petitioner would not be entitled to habeas corpus relief because errors in the course of a state's post conviction process simply are not cognizable in a federal habeas petition. Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) ("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation. . . . Federal habeas power is 'limited ... to a determination of whether there has been an improper detention by virtue of the state court judgment.'")

    **5.   Certificate of Appealability**

Section 102 of AEDPA, 28 U.S.C. § 2253(c), codifies standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." In the case at bar, Petitioner has not made any showing that he has been denied any of his

constitutional rights. Accordingly, a certificate of appealability should be denied.

III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied. In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules, the parties are all owed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

Dated:   7 September, 2006

cc:  Hon. Thomas M. Hardiman
     United States District Judge

     ALBINO MURO
     DV-7885
     SCI Coal Township
     1 Kelley Drive
     Coal Township, PA 17886-1021

     Rebecca D. Spangler, Esquire
     Office of the District Attorney
     (Served electronically by CM/ECF)